Good morning Your Honors. May it please the Court, Morgan Goodspeed on behalf of Sonia Calla Mejia. The question this Court faces is how to reconcile two provisions of the Immigration and Nationality Act. Well, first thing you've got to tell us is why we have jurisdiction. What are you appealing from? I'd be happy to do that. What we're appealing from with respect to our statutory argument. So you're raising this issue for the first time? We are, Your Honor. Do you think that that's the process that issues like this get raised for the first time in the Court of Appeals? That is the process when there is no administrative process that the agency holds out. That's exactly what this Court said in Etienne v. Lynch, a decision that Your Honor was on. In that case, the applicant had not raised the legal argument at any point prior to the petition for review because The whole process starts up here. Well, Your Honor, again, that's the case when the agency does not hold out any administrative review. And that's what the statute says, that the exhaustion must occur for all remedies available as of right. That's what Etienne says, that the agency holds out. And what the agency points to here is its regulation at 8 CFR 1208.31e. But you started the process below and then stopped it, dropped it. It is correct, Your Honor, that we raised this issue before the immigration judge. But as the immigration judge and the government acknowledged, there was no authority for the judge to consider that issue. It's clear under the regulations, under 1208.31e, it's equally clear under 8 CFR 241.8, that there's no opportunity to discuss anything other than withholding of removal for someone's Well, there's no opportunity because you did discuss it. Well, Your Honor, I agree. And then you voluntarily withdrew it. I agree that we brought it up. If Your Honor, we brought up in the context of a request for the government to exercise prosecutorial discretion. In fact, the IJ, as I recall, was willing, in fact, eager, maybe not eager, but at least willing to prepare an opinion on that very issue, issue and order. As I understand it, it was just a practical concern on your behalf that your client had been detained. She didn't wish to be detained any longer. I don't blame her for that. But that was sort of the, what you were facing and you decided, you made a decision to forego that order from the immigration judge. Isn't that right? Yes, Your Honor, but I want to be clear here. There are two different issues. One is jurisdiction and one is waiver. The jurisdictional question is, does the agency hold open any opportunity here? The answer under the agency's regulations, which this court said in Etienne is what we have to look to, is no. So then the question is the more prudential waiver opportunity. It's true that we brought up this issue and that we eventually withdrew that when it became clear that there was no real opportunity. And that might be subject to a waiver. Wait, wait, wait. What in the record shows you withdrew it because there was no real opportunity? Well, Your Honor. Because of this, the IJ says she's willing to issue an order, just like Judge Diaz said. The immigration judge said she was willing to issue a more formal order that would be denying under the clear regulations our ability to bring this claim at that point. So what do you mean when you say you didn't, you withdrew it because you didn't have an opportunity? We withdrew it because it was clear that that claim that we had raised would be dismissed for lack of jurisdiction. Because it's clear you're going to lose doesn't mean it's clear you don't have an opportunity. Well, there is a difference, Your Honor, with all due respect between clear that someone is going to lose an argument and clear that there is no jurisdiction to consider that argument. Did the IJ ever say there's no jurisdiction? The immigration judge repeatedly said, I do not believe I have the authority. And the government has repeatedly said that the immigration judge did not have the authority. And more importantly, even if the immigration judge was wrong, that she thought perhaps she had some authority to consider this issue, again, the clear question is the regulations. And it would be Is there any law of futility that would help you out? Well, Your Honor, futility is, as we explained in our briefs, an issue that goes to the waiver aspect. So to the extent that this is not a regulatory mandated argument, but rather an argument that we waived to be entirely candid in zealous advocacy, raising an argument that was not cognizable before the agency, to the extent that gets into issues of actual waiver versus exhaustion, then that's a prudential argument. And that's where futility, according to this Court's decision in Selgekha v. Carroll, futility is a defense to waiver. And that is, we think, the appropriate construct here. Perhaps another way of thinking about it is, if Ms. Kaye Mejia had never mentioned asylum in the course of these proceedings, it's clear under the regulations that she would be able to do so now in the context of a petition for review. So the fact that her advocates requested some exercise of prosecutorial discretion should not count against her and isn't cognizable until this Court now. And when you say exercise prosecutorial discretion, you're referring to the request to the government attorney that they restart the removal proceedings? Is that correct? Correct. The issue of the removal charge or whatever it was? Correct. This issue was brought up in the context of a request to the government that instead of placing Ms. Kaye Mejia in reinstatement proceedings, where it is again clear under 1208.31e that she would not be able to raise an asylum claim, there was a request that the government would instead pursue removal proceedings under the more standard full removal proceedings. Ms. Goodspeed, in all fairness to you, you were not the lawyer in front of the immigration judge. Your Honor, my team represented Ms. Kaye Mejia. That's correct. Okay. But again, I will say that just as in Etienne, if Ms. Kaye Mejia did not have any opportunity under the regulations to bring the claim, she should not be penalized for bringing up an issue that she did not have to raise before now. And to that point, these are defined as withholding only proceedings, right? That's correct, Your Honor. ACFR 241.8 says that there is no opportunity for any hearing for someone in Ms. Kaye Mejia's position. And ACFR 1208.31e says that there is an exception for full consideration of the request for withholding of removal only. As to those two statutes you started out arguing about, how do we resolve what appears to be a conflict? Do we do it by the last in time rule or do we do it specific over general? Well, Your Honor, the last in time rule is unavailable here because these two provisions were passed as part of the same act, the Illegal Immigrant, Illegal Immigrant Immigration Reform and Immigrant Responsibility Act. So that tiebreaker, as it were, is unavailable. We think that the court's primary goal here is to harmonize the two provisions. And there's no flexibility in the asylum provision. The government has never suggested that irrespective of status could be read in a particular way. But it has suggested that there's flexibility in the reinstatement provision. It's suggested that the term relief should not be read to cover any immigration remedy possible, but rather should exclude humanitarian protection. We're asking for this court to simply take that interpretation to its logical ends and to cover all three forms of humanitarian protection, which are asylum, withholding of removal, and convention against torture relief. Those are three forms of protection that can be distinguished from the more traditional relief. And that's a way to harmonize the two statutes, a way... We would be alone, it seems to me, in going that route. It seems like there's a consensus of authority in the circuits that suggests otherwise. Well, Your Honor, I would say consensus is quite strong there. The Second Circuit and the Eleventh Circuit have addressed the issue with only glancing attention. The Fifth Circuit and the Ninth Circuit have decided otherwise, but those decisions are completely opposed to one another. The Fifth Circuit paid attention only to the reinstatement statute. We would be the first. Is that fair? You would be the first. That's correct, Your Honor. Not that we're afraid of being the first, but that's a consideration, right? That's correct, Your Honor. We think that your analysis could look much like the Ninth Circuit's analysis, which, in fact, rejected the Fifth Circuit's analysis. So there's not complete unanimity here, but you would, in fact, be the first to say that the asylum statute should take precedence here. And we would be doing so against what some would consider to be, to the extent that there's a conflict here, why is the government's rendition or interpretation of the statute unreasonable, in your mind? Well, Your Honor, we think it is, but we think, more importantly, that there's no Chevron deference available here. And that's so for at least three reasons. The first is that no Chevron deference is available if there's only one way to harmonize the statutes. That's given no way to harmonize the two statutes, other than what it's offered, which is to exclude humanitarian protection. So we think that's the rule that is mandated at step one. But even if the Court perceives some sort of ambiguity here, there are a couple reasons why Chevron deference would not apply. Well, I'm saying the government's argument with respect to the first point is that, ultimately, the Attorney General retains some discretion, notwithstanding the language of the statute, in order to ensure that our nation comports with international norms. That doesn't seem to me to be unreasonable. Well, Your Honor, again, that's assuming that we get to step two, which I can address in a moment. With respect to the discretionary component, I want to be clear about a couple things. The first is that eligibility for asylum is not discretionary, even though the ultimate grant of asylum may be. The Supreme Court has acknowledged that distinction in particular. The second point is, with respect to the Attorney General's discretion, perhaps, to make us comply with treaties, the asylum remedy is also mandated by treaties. That's what this Court said in Salgeca. That's what the Supreme Court said in INS v. Cardoza-Fonseca. Asylum is a treaty-based remedy, just as withholding of removal and just as CAT. And more importantly, even if it isn't mandated by treaties, we have submitted that it is mandated by Section 1158. So the treaty-based component does nothing to resolve those two statutes. Well, there's a difference between saying that it's one of many remedies as opposed to saying that it's the only exclusive remedy that a country has to allow in order to comply with treaty obligations. Which one are you arguing is the correct view? We think that asylum is one of three remedies that are required by treaty. One of three. But if the government chose to forgo asylum in favor of removal, that would not be a violation of our treaty obligations, would it? We think that it would be a violation of our treaty obligations in these circumstances. The government has never responded to Article 31 of the U.N. Convention, which requires that there be no penalty for someone who fits the definition of refugee based on their illegal status. And that's exactly what the government's view of the reinstatement provision would do. If I could just briefly turn to the other reasons why Chevron deference is inappropriate here. The first is that the Supreme Court has divided evenly on whether Chevron deference is ever appropriate in the context of two conflicting statutes. That's because it doesn't look like the ordinary delegation to an agency to resolve some sort of policy gap. But even if this Court thinks that that would in some circumstances constitute ambiguity, at a minimum, the Supreme Court has unanimously said that the agency must actually grapple with that ambiguity. And in this case, the government has never acknowledged Section 1158. It's believed that its interpretation of Section 1231 is compelled by statute. And if that's so, then it does not have the interpretive ambiguity. It has not wrestled with the interpretive ambiguity in a way that's sufficient to allow for Chevron deference. The Ninth Circuit came out differently on this, but only because it said that this argument that I'm making right now is a procedural challenge. That's simply wrong. A procedural challenge to a regulation is a way to nullify a regulation because the agency didn't check the right boxes or something of that nature. But what I'm talking about right now is a reason why the agency does not get Chevron deference in the context of a substantive challenge. That's entirely different from procedural challenges. And so the reason why the Ninth Circuit gave Chevron deference here is simply inapplicable. If I could briefly address, there are two other tiebreakers. Judge Floyd, you mentioned the specific and the general. We think that in this case, the asylum statute is more specific as to asylum. The reinstatement statute is more specific as to status. But the asylum statute also includes this qualifier irrespective of status, essentially a notwithstanding other more specific. The other tiebreaker that we have not discussed is the rule of lenity, which comes in when there is ambiguity in immigration law. Thank you, Ms. Gisby. Mr. Palau. Good morning. May it please the Court, Emanuel Palau for the respondent, the Attorney General. There are a number of jurisdictional bars in this case. First and foremost is the only order that's remotely before the Court is the order that was issued in February of 2016, which granted the petitioner the protection she wished, withholding of removal. That order addresses no other issues. Appeal of that order was waived. It was never appealed to the Board. The first appeal of any sort that took place was directly to this Court, despite the fact that the issues being addressed to this Court were never presented to the IJ or the Board. There was, as you noted, Judge Traxler, a motion before the Immigration Court that the Immigration Court express their willingness to address those issues, which were the invalidity of the original removal order and also her eligibility for asylum, despite being in a re-estatement proceeding. But as I understand their position, it is that the IJ didn't have jurisdiction to consider it to start with. Well, of course she did. That's why she filed the motion. We'll never know that. That's her reading of the regulation. The proof is that the Immigration Judge repeatedly said, I will entertain your motion, I will rule on it, but let me know what you think. Well, it doesn't mean that she had jurisdiction. I'm sorry? It doesn't mean that she had jurisdiction. Well, that's an issue to be presented by having her rule, and if she's wrong, the Board can correct her, and if they're wrong, you can correct them. So is it your position that, despite the fact that these are captioned as removal-only proceedings, if they had said nothing, as opposed to sort of dangling the case in front of the judge, simply had focused on the removal aspect of the proceedings, that that still would have amounted to a waiver in this case? I don't think this is a waiver. This is not a waiver. It would have been a jurisdictional issue of some sort? The jurisdictional issue is exhaustion of your remedies. She had a procedure before the Immigration Court that's defined as a removal-only proceeding. Withholding-only, yes, sir. Withholding-only, I'm sorry. Yes, but despite that, she believed that she also had the right, based on her legal arguments, that she was still eligible for asylum. She believed that. Okay, but what if she had not entertained that belief, had said nothing about asylum? If she had not filed that motion? Yeah. Are we still making that argument here in court? No, because no one has ruled on that. There's an administrative process in place. Well, but the question is whether or not she was required to exhaust that argument before the immigration judge. And if, taking your position to its logical extreme, even if they had said nothing, it appears that she would have failed to exhaust. That's correct. Is this the right process? No, sir. No, no, no. When you're in this lady's position, and you're seeking asylum, and you're seeking asylum, is the place to raise it before the IJ as she did? Or is there another procedure? Well, that's exactly what the petitioners in Perez-Guzman and Ramirez-Mejia did. They did. The board also said, you're wrong. You can't ask for asylum. You're ineligible in a reinstated proceeding. And then it came to the court. And that's how the process is supposed to work. And it's not, exhaustion is not just a best practice or a good idea. It's jurisdictional. So the fact that, the whole idea is to give the administrative agency an opportunity to address these issues in the first instance, because they have the authority to do so. Is it necessary for us to resolve what on its face appears to be a conflict between two statutes? I missed the last part of your question, Your Honor. Sorry. Which appears to be a conflict between two statutes, 1158A1. You're talking about the merits argument? Yes. No, you don't get to that argument, Your Honor, because it's not been exhausted properly before the agency in this case. That's our position. That's where we filed the motion to dismiss, which is still pending. That issue is only properly before this court if it was asserted to the immigration court and appealed to the board. Those remedies are available to her as a right, and nothing in immigration court's conduct provides to the contrary. She's trying to have it both ways. She's saying, on the one hand, how could I ask for withholding? I'm sorry, asylum, only withholding is permitted, yet they filed a motion arguing just that. You can't have it both ways. She obviously believed there were legal arguments supporting her eligibility for asylum despite being in reinstatement, and she voluntarily withdrew them. What the record indicates is that there was a rather extensive colloquy between counsel and the immigration court after the immigration court noted that I will grant withholding of removal in this case. Then the discussion became, do you want to pursue your arguments regarding asylum? There was a lot of back and forth about the impact of pursuing that asylum argument. In the end, she said, I want that withholding order final now, so I'm going to withdraw my motion saying that I'm actually eligible for asylum in this proceeding. I mean, so there she unequivocally took the issue away from the immigration court, and the immigration judge told her several times that if you're going to pursue this argument, I will entertain it, but I want to write a reasoned decision on it for the purpose of appellate review. That never happened. The appellate review never happened. What did happen out of the blue was that this court is now being asked to decide that in the first instance on a cold record. There's nothing in any agency decision before this court, which is a court of review, that gives you the benefit or thinking is of the immigration court or the board in this case. That's just not how the system works. That system, I mean, that decision requires fact-finding, doesn't it? To decide if a person is eligible for asylum. I don't believe it does in this case, Your Honor, because there's no issue that she qualified. We're not contesting the immigration court's grant of withholding of removal, and by law, the burden of proof for that kind of protection is higher than it would be for asylum. So I think I do agree with counsel that because the burden of proof is higher for withholding and she was granted that, had she been legally eligible to apply for asylum in the reinstatement proceeding, it follows that she probably would have met the burden of proof in that case. In this case? Yes, so I think we're being... Do you say that in every case, that there will never be any fact-finding required? No, I can't say that. To determine asylum? I can't say that. So the government made the same argument before the Ninth Circuit in Paris. Guzman and the court rejected it. Was that just wrong as a matter of law? Yes, it was wrong, in my opinion. Yes, that was a futility or prudential sort of exhaustion, but this circuit's decisions aren't that... Basically, they were saying, if you're going to lose before the board, you don't have to exhaust the argument. And that's not... Excuse me, speaking. The Etienne case is distinguishable there. There clearly was no option for the alien to exhaust because the form they were required to appeal on did not allow them to present legal issues, only factual issues. This is not... This is distinguishable because here, clearly, the immigration court said, give me your motion, I want to decide it. And I think that the Ninth Circuit's approach in Perez-Guzman basically waters down the exhaustion. It's kind of like a 16th seed in March Madden saying, a 16th seed has never beaten a one seed, so we're not going to play the game. We're just going to forfeit. That's not how it works. You've got to play by the rules and set two things up properly, and that's what's not happened here. Why can't this court determine that one administrative remedy was available to Ms. Majeya as of right? Because it's not been presented properly. It has not been teed up properly. To present that, to get that issued to the court, she would have had to present the issue to the immigration court, and the immigration court could have said, I'm not going to entertain your motion because this is a reinstate proceeding, we're not going to look at that. And the board could have said the same thing, and then you could have ruled on that. But that's not happened here. You're being asked in the first instance to decide an issue which is not addressed in the only immigration court order that's out there, which is the order granting withholding of removal, a favorable order for her. So basically you've not, I'm sorry, the petitioner has not allowed the agency process to work properly, and she could have, and the fact that she, in addition to the exhaustion issue, there is a potential waiver issue in that she affirmatively withdrew her arguments before the agency. Is there any case law statute that would have resulted in the immigration judge being able to actually rule on the merits of her asylum request? Isn't it clear what the result would have been? Well, if it's so clear, I'm not sure why we're here. I mean, the fact is, she could have made the same arguments she's making to this court to the immigration judge, and she did in her motion, albeit in a much more truncated manner. Well, I'm not talking about clearest to the merits, just clearest to the result that the IJ would have said, I can't consider it because I don't have jurisdiction. This is a withholding only proceeding. Well, that's the whole point, your honor. You're guessing as to what the IJ might have decided. I'm asking you to tell me what possible basis would the IJ have for considering an asylum claim in a withholding only proceeding. Well, as I said, your honor, it's possible she could have accepted the arguments the petitioner is making, that there's a conflict between the two statutes, and that the only way for the U.S. to meet its treaty obligations is to afford her that opportunity. The board might also have agreed. It's possible they could have agreed on that. Or the board, if they accepted the arguments that the two statutes conflict, 1158A and 1231A1, the reinstatement statute, if they agreed there was a conflict, they could certify it up to the attorney general for a decision on that. But all that was taken away, and you can't just say there's no way the immigration court or the board would not have accepted her arguments. It's possible they could have, and that's what exhaustion is all about. You've got to give them a shot to make a decision, and then you've got something to review. Here there's nothing for you to review. You're being asked to decide this issue in the abstract, and that's not how exhaustion works. So, the failure to exhaust her remedies as to the February 2016 order precludes this court's jurisdiction to decide the issue that's being presented here about the interplay between the asylum statute and the reinstatement statute. Additionally, and very briefly, this court lacks jurisdiction to review the underlying order by statute. The reinstatement provision borrows review of that by the immigration court and the board, and this court as well. And even to the extent that legal or constitutional claims are implicated under 1252A2D, that provision does not excuse the 30-day filing requirement or the exhaustion requirement as to the original underlying order. Moving on to the merits, assuming you do have jurisdiction, as you noted, Judge Diaz, the courts which have considered the interplay between the two statutes have all unanimously ruled that the limitation on asylum in 1231A5 is a clear expression of Congress's will that people who enter the country are removed legally and reenter illegally should not have the same benefits as someone who has not violated the laws by treating the border as a revolving door. That does not conflict with the asylum statute, which merely says if you're an alien and have no status to be here, you can apply for asylum. The reinstatement provision simply acts as a limitation or restriction of which there are many in the statute on the asylum availability. The asylum provision itself says any alien can apply, but then it proceeds to carve out many exceptions and conditions for that. Additionally, that statute authorizes the Attorney General to impose limitations or conditions on that as well. I would point out that section 1231A5 doesn't bar aliens from getting asylum. What it does is bar aliens who have repeatedly reentered the country after being ordered removed cannot apply for asylum every single time they reenter illegally. Congress was very clear in the legislative history, which Petitioner makes no mention of, that it's very clear in the history as well as the language that Congress got tired of aliens who entered the country illegally or were removed, had an opportunity in that initial proceeding to apply for asylum withholding or CAT, were ordered removed nonetheless and just come back illegally and get the whole same package of options that they had the first time. So to disincentivize that conduct, Congress made it very clear that if you do reenter illegally after being removed, you can apply for withholding or CAT only because we are required to do that under our treaty obligation. Well, see that's, and I hate to beat a dead horse, but isn't that the problem with this asylum claim before the IJ? You've got the reinstatement bar. You've got the regulation that says that the alien has no right to a hearing under those circumstances before an immigration judge. And then you've got this exception that allows for the hearing, but solely on the issue of whether or not the alien is entitled to withholding. So I don't understand how the IJ could possibly consider a claim of asylum under those circumstances. Well, Your Honor, you can consider anything that's brought before you as a judge. Well, sure. I mean, I guess I can consider whether there's life on Mars, but that's... Well, so we'd like to hear your opinion about that. Once you put that in writing, that can be reviewed by a court. So the point here is that Congress wanted to keep that proceeding, did not want to afford people who violate the law repeatedly the same incentives to keep doing that. And the whole point is that's a statutory language, and that's the regulatory history and the legislative history of why 1231A5 was enacted. That does not conflict with a statute that says if you're an alien and you need protection or relief because you're being persecuted or tortured, come here. You know what? The reason that she's not eligible for asylum and reinstatement here, the petitioner, is because she reentered illegally after being ordered removed back in 2015. She could have, after her removal, have presented herself to the authorities a second time, have said, I'm still facing persecution in my native country, and I want to apply for asylum, withholding removal, or cap protection. Will you give me a hearing? And they would have done that. Instead, she reentered illegally. That's the course of action that she chose, and that's what put her in a situation of being an illegal reentrant and subject to the bars of the reinstatement petition. No, I get that, and I think perhaps she may lose on the merits. I'm still struggling with whether or not it's appropriate to have her do something which appears to me anyway to be futile before the immigration judge and then the BIA. But we've gone over that. Let me kind of have you. Would you address Eddie N.? She relies substantially on Eddie N., and I may be mispronouncing it. Would you address that particular case, please? Yes, that's a pretty black and white situation where the alien was subject to a FARA, an Administrative Removal Order, and there the mechanism to appeal or contest the administrative officer's decision that they're removable is a form which had checkboxes and fill in the blanks type of thing. The only option on that form was to say, if you have any factual issues or factual circumstances that undercut my determination that you're removable, check this box. It did not absolutely allow to have a checkbox for legal arguments or any other reasons why you should not be ordered to move by me, an administrative officer. That was an administrative proceeding. Here, we're an immigration court in reinstating proceedings, and she's got the full range of options. She can argue whatever she likes, and she did. The problem is that she withdrew her motion. No one is saying she was barred from filing a motion before the immigration court arguing that she could apply for asylum contrary to the statute or that she could contest the original removal order contrary to the statute. She made those arguments, but for reasons unknown, and they don't appear in the record, they weren't because she realized they were wrong. What the record indicates was I'm withdrawing my motion because I want your grant of withholding to be final as of today, period. That was a tactical decision by the petitioner who was represented by counsel, obviously. That took those two issues away from the immigration court. Otherwise, the record is pretty clear that the immigration court was ready, willing, and able to write a decision addressing those issues. Had she done so, those could have been reviewed by the board. Had it done so, then you'd be reviewing it here today, but there's nothing for you to review, and that's why she's failed to exhaust her administrative remedies in this case. Okay, thank you. Thank you, Your Honor. Ms. Goodspeed? A couple points on exhaustion, Your Honor, if you aren't sick of it yet. We're exhausted. I didn't think of that one. And a couple points on the merits then. First, on exhaustion, it sounds as though what the government is saying here is that Ms. Kymahia, again, is being punished for bringing up an issue that the regulations would not have allowed her to bring up. He seeks to distinguish Perez-Guzman by saying the Ninth Circuit got it wrong, and he seeks to distinguish Etienne, if I understand it, by saying that there was no hearing or something like that there. There was a hearing before an immigration judge in Etienne, just as there was a hearing before an immigration judge in this case. And in that case, the court looked to the regulations, which the government never reads or mentions, and said that they did not allow that particular claim to be raised. It's the exact same situation. Here, with the exception that Ms. Kymahia raised an issue that perhaps she did prematurely. To one point on that, Judge Traxler, we are not seeking for this court to actually grant asylum to Ms. Kymahia, although as the government recognizes, that will follow naturally from the course of the proceedings. What we're seeking is a remand for the government to consider her application for asylum. So you want to go back to the immigration judge? That's correct. We'd like to go back to... Where you were to start with. Correct, but with the instruction this time that instead of being placed in withholding only proceedings, we have the ability to apply for asylum. If I could turn to the merits. First, the government says that the reinstatement provision acts as an exception to the asylum provision, but of course the same thing could be said in reverse. Each has exceptions. The reinstatement provision has exceptions that the government has created for withholding of removal and Convention Against Torture Protection. The asylum provision has exceptions that are listed in the statute, which cuts exactly the opposite from what the government says here. When Congress takes the time to place exceptions expressly in the statute and to include cross-references even to Section 1231, then that should suggest that there are no other implicit exceptions available. Tell me again now, why is it we should reconcile these statutes here as opposed to letting the agency deal with it? Well, Jonah, the agency already has regulations that say that asylum cannot be brought in the administrative process. So although we think that those regulations were not the agency from doing something different here, that goes back in some ways to the exhaustion point. The suggestion that the immigration judge or the Board of Immigration Appeals could have done anything differently is incorrect. Both of those entities are bound by the regulations and it's those regulations that we think are flawed. But there's no adage, you know, bad facts makes for bad law. We've got a cold record here and you're asking us to project out what should be done in the future. It's really not before us. Well, your Honor, we're asking you to decide whether a regulation complies with the statute. That's the wheelhouse of what courts do and there are no facts that need to be developed for that. It's a pure question of whether the agency's choice here to allow only some forms of humanitarian protection violates a statute that says asylum must be available regardless of that person's status. Just very quickly with respect to some of the policy points that the government raises that what Congress was trying to do was to disincentivize reentry into the country. I want to be very clear that the number of applicants who reenter the country have their order reinstated and are subject to some sort of reasonable fear interview is something like 5%. And perhaps even more critically, the exact same procedures that the agency offers right now are a reasonable fear interview, a form I-589, and a hearing before the judge on withholding. We're merely asking that those same procedures allow a slightly different claim of asylum. So the thought that this is changing some sort of incentive structure is incorrect. Thank you, Your Honors.
judges: William B. Traxler Jr., Albert Diaz, Henry F. Floyd